UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|   |   |
|---|---|
| **RONNIE ANDREWS,** | ) |
| Plaintiff, | ) |
| v. | ) Civil Action No. 11-1089 (ESH) |
| **WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY, ET AL.** | ) |
| Defendants. | ) |

## MEMORANDUM OPINION

Plaintiff Ronnie Andrews filed suit against Washington Metropolitan Area Transit Authority ("WMATA") and MV Transportation, Inc. ("MV") on behalf of himself and similarly situated parties claiming that a MetroAccess[1] driver who was infected with tuberculosis ("TB") exposed MetroAccess passengers to this disease. Before this Court is defendant WMATA's motion to dismiss on the ground that it cannot be held liable for the acts of the driver or the driver's employer, co-defendant MV, because MV is an independent contractor. For the reasons explained herein, this Court agrees and grants WMATA's motion.

### BACKGROUND

On April 20, 2011, Plaintiff Andrews filed suit against WMATA and MV in the District of Columbia Superior Court on behalf of himself and "all other persons similarly situated"[2]

---

[1] MetroAccess is a door-to-door transportation service that is part of WMATA's transit system. (Compl. ¶ 3; Mot. to Dismiss at 9.) WMATA contracts with MV" to provide dispatch functions, service, maintain MetroAccess vehicles, and provide drivers." (*Id*; *see also* Compl. ¶¶ 12, 60.)

[2] Plaintiff Andrews has not yet sought class certification, which would enable him to serve as a class representative for those "similarly situated." Although those "similarly situated"

because a MetroAccess driver drove passengers while infected with TB and placed those passenger at risk of infection. Plaintiffs sue for negligence, intentional infliction of emotional distress, and a private right of action for public nuisance, and they seek damages, costs, and attorneys' fees. On June 14, 2011, defendants WMATA and MV removed the action to federal court pursuant to 28 U.S.C. § 1441. (Joint Notice of Removal.)

Count II alleges that WMATA was negligent based on the acts of the driver who was employed by MV. (Compl. ¶¶ 8-9.) Plaintiffs claim that the driver was negligent in continuing to drive a MetroAccess van when he knew or should have known that he had TB. (*Id*. ¶¶ 23, 65.)[3] Count III seeks to hold WMATA liable for intentional infliction of emotional distress and Count IV alleges a private action for public nuisance. (Compl. ¶¶ 70-97.) In support of these two claims, plaintiffs claim that WMATA was at fault for knowingly and intentionally disregarding the public safety by allowing the driver to continue driving while knowing that he had TB. (Compl. ¶¶ 76, 77, 79, 90-94, 97.)

WMATA filed a motion to dismiss all counts on the ground of sovereign immunity and sought dismissal of Count III and Count IV for failure to state a claim. (*See generally* Mot. to Dismiss; *see also* WMATA's Reply to MV Transportation, Inc.'s Opp'n to WMATA's Mot. to Dismiss ("Reply") at 2 n.1.) Plaintiffs responded that they seek to hold WMATA vicariously—

---

individuals are not technically plaintiffs at this point, this Court will refer to this group collectively as "plaintiffs" in this Memorandum Opinion.

[3] In the complaint, plaintiffs also suggest that WMATA itself was negligent. (*See id*. ¶¶ 23-24 (stating that WMATA "knew or should have known that the Driver was seriously ill" and "created an unsafe environment in which to transport Plaintiffs"). In their opposition to WMATA's motion to dismiss, however, plaintiffs have explicitly renounced any claims of negligent supervision, delegation, or training. (Pl.'s Opp'n to Def. WMATA's Mot. to Dismiss ("Opp'n") at 6.) They further reject the suggestion that their claims relate to negligent awarding of the contract to MV or failure to create policies to ensure that riders are not infected with TB. (*Id*.)

not directly— liable for the negligence of the driver and that, therefore, sovereign immunity did not apply. (Opp'n at 6 ("Plaintiffs' claim is simply that Defendants, among other things, negligently exposed them to TB through their driver.")) WMATA responded that the driver was an employee of MV, who is an independent contractor, and therefore, WMATA cannot be held vicariously liable for the torts of an independent contractor. (Reply at 1, 3-5). In support of this argument, WMATA submitted an affidavit to support its contention that is cannot be vicariously liable because MV is an independent contractor. (*Id.*, Ex. 1).

This Court held a telephone conference on September 27, 2011, to clarify plaintiffs' theory of liability and to inform the parties that, due to WMATA's submission of an affidavit, WMATA's motion to dismiss would be converted into a motion for summary judgment. *See Marshall Co. Health Care Auth. v. Shalala*, 988 F.2d 1221, 1226 (D.C. Cir. 1993). During the telephone conference, plaintiffs stated that they sought to hold WMATA vicariously liable on all counts for the negligence of MV, an independent contractor. The Court therefore ordered briefing on the question that would control the summary judgment decision: whether WMATA could be vicariously liable for the acts of an independent contractor and its employees. (Minute Order of Sept. 27, 2011.) In response, plaintiffs did not dispute the facts set forth in WMATA's affidavit, but instead, they argue that certain exceptions to the general rule against holding a company liable for the acts of the employees of an independent contractor should apply.

## ANALYSIS

### I.  INDEPENDENT CONTRACTOR LIABILITY

It is undisputed that MV is an independent contractor, (*see generally* Reply; Pl.'s Sur-Reply to WMATA's Reply to Pl.'s Opp'n to WMATA's Mot. to Dismiss the Compl. ("Sur-Reply")), and under "[t]he general rule in the District of Columbia[,] ... an employer of an independent contractor is not liable for physical harm caused by the acts or omissions of the

3

contractor." *Wilson v. Good Humor Corp*. 757 F. 2d 1293, 1301 (D.C. Cir. 1985) (internal footnote omitted). However, there are certain exceptions for "special situations where the employer is in the best position to identify, minimize and administer the risks involved in the contractor's activities." *Id*. at 1301. Therefore, WMATA will not be liable unless one of the exceptions to this rule applies. Opposing summary judgment, plaintiffs invoke two of the established exceptions to the general non-liability rule.

### A. INHERENTLY DANGEROUS ACTIVITY EXCEPTION

First, plaintiffs contend that WMATA is not protected by the general rule shielding parties from liability for the acts of independent contractors because the "inherently dangerous "or "peculiar risk" exception applies. (Sur-Reply at 5-6.) WMATA responds that plaintiffs have failed to prove the existence of an inherent danger and, in addition, they have not shown that the risk was recognizable in advance. (WMATA's Response to Pls.'s Sur-Reply ("Opp'n to Sur-Reply") at 1-6.) This Court agrees.

It is established that activities involving "inherent dangers" or "peculiar risks" are "special situations" justifying an exception to the general non-liability rule. *Id*. at 1303 ("The District of Columbia unmistakably recognizes an exception to the general rule of non-liability when an employer engages an independent contractor to perform 'inherently dangerous' work."). A party may show that an activity falls within the "inherently dangerous" exception in one of two ways. First, the activity may be "inherently dangerous" if it is "generically hazardous" such "that, regardless of the skill with which it is undertaken, [it] poses a danger to others." *Id*. at 1303-04. Second, this exception may apply "when an employer has reason to know that his independent contractor is likely, under particular circumstances, to endanger others absent reasonable precautions." *Id*.; *see also id*. at 1305 (explaining that the related "peculiar risk" exception similarly "depends on the fact that the employer knew or had special reason to know

4

that, absent special precautions, an independent contractor's activities were likely to create a particular risk to others in the specific circumstances under which the work is normally done"). In *Good Humor*, for example, this exception applied because Good Humor had long been aware of the special risks to children that were likely to arise from selling ice cream in the street. *Id*. at 1306-07.

Based on a review of the materials before this Court, it is clear that plaintiffs have not met their burden to demonstrate that the "inherently dangerous" exception is applicable. In their Sur-Reply, plaintiffs invoke this exception, but not only do they fail to explain how it applies to their claims, they do not even identify the activity thought to be inherently dangerous. Furthermore, plaintiffs have offered no proof that WMATA "knew or had special reason to know that, absent special precautions," the activities with which MV was charged "were likely to create a particular risk" to its passengers. *Good Humor*, 757 F.2d at 1305; *see also Levy v. Currier*, 587 A.2d 205, 209 (D.C. 1991) ("Crucial to a contractee's liability, therefore, is whether the contractee knows or has reason to know of the special danger inherent in the activity of the independent contractor."). Therefore, this Court finds that plaintiffs have failed, as a matter of law, to show that the "inherently dangerous" exception applies.

**B.      APPARENT AUTHORITY**

In the alternative, Plaintiffs contend that WMATA may be held liable for the acts of its independent contractor under a theory of apparent authority.[4] (Sur-Reply at 6-7). In response, WMATA counters that it cannot be held liable because plaintiffs have not alleged the essential elements of this claim, or in the alternative, because claims based on apparent authority are

---

[4] Apparent authority is the "power to affect the legal relations of another person by transactions with third persons, professedly as agent for the other, arising from and in accordance with the other's manifestations to such third persons." Restatement (Second) of Agency § 8 (1958).

5

barred by sovereign immunity. (Opp'n to Sur-Reply at 2.) Given the complaint and Sur-Reply, the Court must agree that plaintiffs have not provided any basis upon which to invoke the doctrine of apparent authority.

A claim based on apparent authority must be supported by evidence that "a third party 'reasonably relied upon conduct of the principal (including acquiescence) or conduct of the agent for which the principal is responsible.'" *Gonzalez v. Internacional de Elevadores, S.A.*, 891 A.2d 227, 238 (D.C. 2006) (quoting *Lewis v. Washington Metropolitan Area Transit Authority*, 463 A.2d 666, 670 n.7 (D.C. 1983)); *see, e.g.*, *Williams v. WMATA,* 721 F.2d 1412, 1416 (D.C. Cir. 1983); *Drexel Burnham Lambert v. Commodities Futures Trading Comm'n*, 850 F.2d 742, 751 (D.C. Cir. 1988); *Wagshal v. Selig*, 403 A.2d 338, 344-45 (D.C. 1979). The party seeking to prove the existence of an agency relationship must show that the reliance was to the third-party's detriment. *Id.*; *Wagshal v. Selig*, 403 A.2d 338, 344 (D.C. 1979). "The third party's perception may be based upon 'written or spoken words or any other conduct of the principal which, reasonably interpreted, causes the third person to believe that the principal consents to have the act done on [her] behalf by the person purporting to act for [her].'" *Makins v. District of Columbia*, 838 A.2d 300, 304 (D.C. 2003) (quoting Restatement (Second) of Agency § 27).

First, plaintiffs' complaint does not allege the basic elements of this claim. Second, the allegations on which plaintiffs appear to rely in their Sur-Reply to support their theory of apparent authority are not found in the complaint, nor are they supported by any competent evidence. (Mot. to Dismiss at 7-8.) The complaint states only that WMATA "holds out the MetroAccess service as part of its own services" (Compl. ¶ 10), and that "WMATA contracted with MV to provide drivers… [and] as such, drivers provided by MV… are employees/agents and/or apparent agents of WMATA." (Comp. ¶ 61). Plaintiffs merely assert that plaintiffs

relied on WMATA's business reputation (Sur-Reply at 7), but these unsupported allegations are not properly before this Court.  Plaintiffs have not set forth a plausible claim based on apparent authority and, therefore the Court finds no basis upon which to hold WMATA vicariously liable for its independent contractor.[5]

## CONCLUSION

Therefore, for the foregoing reasons, this Court grants summary judgment as to all claims against WMATA.  A separate order accompanies this Memorandum Opinion.


                                                         /s/
                                              ELLEN SEGAL HUVELLE
                                              United States District Judge

Date:   October 18, 2011

---

[5] Having granted summary judgment in favor of WMATA, the Court need not resolve the issue of whether the doctrine of apparent authority is inapplicable because WMATA is a government entity. (Opp'n to Sur-Reply at 7-8.)  However, while it is true that WMATA is considered to be a government agency and courts have found that the doctrine of apparent authority does not apply to certain dealings with the government, *see, e.g.*, *Smith v. WMATA*, No. 95-cv-0687, 1997 U.S. Dist. LEXIS 4504 (D.D.C. Apr. 4, 1997*); Littlejohn v. Washington Metro. Area Transit Authority*, 1992 U.S. Dist. LEXIS 7510 (D.D.C. May 28, 1992), those cases are not factually similar to this case. In particular, in the cases relied upon by WMATA, courts have found immunity based on the principle that "anyone entering into an arrangement with the Government takes the risk of having accurately ascertained that he who purports to act for the Government stays within the bounds of his authority…. And this is so even though … the agent himself may have been unaware of the limitations on his authority." *United States v. District of Columbia*, 669 F.2d 738, 747  n.13 (D.C. Cir. 1981) (quoting *Federal Crop Ins. Corp. v. Merrill*, 332 U.S. 380, 384 (1974).  Since this is not the situation here, the Court is hesitant to embrace WMATA's immunity argument.